[No. C028377. Third Dist. Aug. 16, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH L. JEFFRIES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, IV, and V of the Discussion.

## COUNSEL

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALLAHAN, J.**—In this case we hold that CALJIC No. 2.50.01, as it read prior to its 1999 revision, adequately conveys the People's burden of proof when it is used with CALJIC Nos. 2.00, 2.01 and 2.50.1. We reject defendant Ralph L. Jeffries's contention that CALJIC No. 2.50.01 allowed the jury to find him guilty without proof beyond a reasonable doubt. However, we accept defendant's contention that the case must be remanded for resentencing in light of *People v. Deloza* (1998) 18 Cal.4th 585 [76 Cal.Rptr.2d 255, 957 P.2d 945].

Defendant was convicted of 16 counts of lewd and lascivious acts upon a child under 14 years of age. (Pen. Code, § 288, subd. (a); counts 1-7, 9-17; further statutory references are to the Penal Code unless otherwise indicated.) The jury found true four substantial sexual conduct allegations (§ 1203.066, subd. (a); counts 7, 10, 11 & 12), as well as a habitual sexual offender allegation (§ 667.71, subd. (d)), a serious felony allegation (§ 667)

and a "second strike" allegation (§§ 667, subds. (b)-(i), 1170.12), which were based on defendant's 1979 conviction of violation of section 288. He was sentenced to state prison for a determinate term of 25 years plus a consecutive indeterminate term of 450 years to life.[1]

In an unpublished portion of this opinion, we consider defendant's contentions that (1) counts 1 and 2 must be reversed as they are outside the statute of limitations; the People concede the point, (2) evidence of his prior sexual conduct was erroneously admitted, (3) he received ineffective assistance of counsel, and (4) the jury was erroneously instructed with the 1994 revision of CALJIC No. 2.90. We shall affirm in part, reverse in part and remand for resentencing.

## FACTS

### Counts 1, 2 and 3

Defendant's daughter, M., was born on November 14, 1981. He began to molest her when she was five years old.

When M. was naked in the bathtub, defendant would bend her over and touch her "private area." The touching felt "[r]ed, hard, [and] slimy," and would last for 30 to 60 minutes. Defendant claimed he performed the touching in order to clean toilet paper from M. This conduct continued until she was eight or nine years old.

When M. was five years old, defendant played a "game" called "Superwoman" in which he would place her naked on his feet and touch her vagina. This occurred approximately 10 times.

In July 1991, after defendant and M. had a disagreement during a telephone conversation, M. decided to tell her mother, Janet, about the molestations.

On July 31, 1991, Sacramento Sheriff's Deputy James Giannelli responded to defendant's residence. M. told him about the molestations in the bathtub.

---

[1]Counts 1 through 7 predated the enactment of the habitual sexual offender law (§ 667.71) and the three strikes law (§§ 667, subds. (b)-(i), 1170.12). Defendant was sentenced to state prison for a determinate term of 25 years, consisting of eight years on count 1, two years each on counts 2 through 7, and five years for the prior serious felony (§ 667, subd. (a)).

Defendant was acquitted of count 8.

Counts 9 through 17 were sentenced under the habitual sex offender law and the three strikes law. Defendant was sentenced to nine consecutive terms of 25 years to life, each doubled per the three strikes law, for a total indeterminate term of 450 years to life.

Janet took M. to the University of California Davis Medical Center for a physical examination. M. told Janet she "didn't want to go through with" the examination.

In October 1991, M. was examined by Lisa Ashley, a pediatric nurse practitioner. She found that the vestibule area of M.'s labia was "very red." A fair amount of discharge was visible there as well. "[T]he opening of the hymenal material was a little bit larger" than Ashley had expected, and "the tissue was rolled back on itself." Ashley concluded that, "most likely," M. had suffered a "penetrating injury" in the form of "digital penetration, finger, object, something like that, something small." Ashley opined it was "very unlikely" that an adult used a finger and a washcloth to remove toilet paper from inside M.'s vaginal area.

Eventually, M. confronted defendant about his acts. He claimed he could not remember them but, if he did them, it was because he was on drugs. He told M. to tell Janet that she "was just lying." M. obliged and told Janet and "everybody" that her accusations were lies.

*Counts 4 through 7*

When she was 12 years old, M. resided on Cortright Way with Janet. One evening, defendant and M. had a conversation about sex. The question arose whether she "ever had sexual intercourse with any other guys . . . ." He took her to the garage and showed her some underwear he purportedly obtained from a stripper. She complied with his requests to put on the panties and to lie down on the floor. He touched her vagina and ultimately had sexual intercourse with her. She tried unsuccessfully to push him off of her.

M. did not report the incident to Janet because she was afraid that Janet "would try hitting [defendant] with her big wrench and they would end up getting in a fight and [Janet] would get hurt." Fighting was common between Janet and defendant.

*Counts 9 through 13*

In the summer of 1995, when M. was 13 years old, she resumed living with defendant. She intended to give him a "second chance," because she felt she had "scared him a little bit" by initiating a prosecution against him and ultimately "dropping charges." They resided in a motel on Auburn Boulevard.

One evening while defendant and M. were alone at the motel, they began "smoking crank" and, at his encouragement, drinking alcohol. She was

"pretty high" that evening. He touched her "private area," and ultimately they had sexual intercourse "all night."

The next day, M. refused defendant's request to "suck his penis." He in turn "[l]icked [her] private area."

During the summer of 1995, while defendant and M. resided at the motel, they had sexual intercourse approximately three times. He touched her breast one time, touched her private area seven or eight times, licked her private area three times and placed her hand on his penis one time.

*Counts 14 through 17*

On occasion, defendant and M. camped out by a river and slept in his van. Inside the van, he touched her private area more than 10 times and placed her hand on his penis four times. He would "bribe" her by telling her that if she did sexual acts with him, he would let her see her boyfriend.

M. reported defendant's conduct to Janet in approximately 1994 or 1995.

In approximately January of 1996, M. recontacted the police regarding defendant's acts. The Sacramento Sheriff's Department placed a recording device on her telephone and ultimately recorded a conversation between M. and defendant. In the recorded conversation, he made several incriminating statements.

*Prior sexual offenses*

The 1979 preliminary hearing testimony of Brenda Z. was read to the jury.[2] In June 1978, Brenda was 10 years old and resided with defendant, her mother, her brothers and a sister in Sacramento. Brenda related four separate incidents that occurred on four consecutive days during summer 1978. On each occasion, defendant had sexual intercourse with her, sodomized her and performed an act of oral copulation on her. On one occasion, he also penetrated her vagina with his finger. He advised her not to tell her mother or anyone of his conduct, or he would go to jail.

Elsie Webb, the maternal grandmother of M., testified that she accompanied defendant and his family on a camping trip in approximately 1986. Defendant, Janet and the children slept in one tent with one of Webb's other grandchildren, six-year-old Daisy M. Webb and her husband slept in a separate tent. Approximately 30 minutes after the children were put to bed,

---

[2] Brenda was deceased at the time of trial.

defendant announced he was entering the tent to get something. Shortly thereafter, Daisy fled from the tent and ran to Webb "screaming and crying." When Webb asked what was wrong, Daisy told her that defendant had placed his hand inside her pajamas in the crotch area. Webb advised Daisy to join her and sleep in her tent.

*Defense*

Defendant testified on his own behalf and denied all of M.'s allegations against him. He also denied molesting Brenda Z. and Daisy M.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III

The trial court admitted evidence of the prior sexual offenses against Brenda Z. and Daisy M., pursuant to Evidence Code section 1108. To guide the jury's consideration of that evidence, the court instructed with CALJIC Nos. 2.00, 2.01, 2.50.1 and 2.50.01.

Defendant claims the trial court erred by instructing, per CALJIC No. 2.50.01, that if the jurors found he committed a prior sexual offense, they "may, but are not required, to infer that he was likely to commit and did commit the crime or crimes of which he is accused."[3] The contention has two aspects. Neither has merit.

Defendant first claims "[t]he instruction was erroneous because there was no rational connection . . . between the circumstances of" the earlier offenses and his guilt of the present charges. He suggests an instruction stating a permissive inference violates due process "if there is no rational way the

---

*See footnote, *ante*, page 15.

[3]CALJIC No. 2.50.01 told the jury: "Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on more than one occasion other than that charged in the case. Sexual offense means a crime under the laws of the state or the United States that involves the following: [¶] Any conduct made criminal by Penal Code Section 288[,] subdivision (a). The elements of this crime are set forth elsewhere in these instructions. [¶] If you find that the defendant committed a prior sexual offense, you may, but are not required, to infer that the defendant had a disposition to commit the same or similar type of sexual offenses. If you find that the defendant had this disposition, you may, but are not required, to infer that he was likely to commit and did commit the crime or crimes of which he is accused."

jury could draw the permitted inference." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243-1244 [278 Cal.Rptr. 640, 805 P.2d 899].)

■ This claim was rejected in *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182], which explains that "the case law clearly shows that evidence that [the defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses." (*Id.* at p. 915, italics in original.) " 'Such evidence "is [deemed] objectionable, not because it has no applicable probative value, *but because it has too much.*" . . . [Citations.]' " (*Ibid.*, quoting *People v. Alcala* (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126], italics in original.)

■ Defendant also claims CALJIC No. 2.50.01 permitted a finding of guilt without proof beyond a reasonable doubt.[4] This claim has no merit.

■ "It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction. [Citations.] '[T]he fact that the necessary elements of a jury charge are to be found in two instructions rather than in one instruction does not, in itself, make the charge prejudicial.' [Citation.] 'The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole.' [Citation.]" (*People v. Burgener* (1986) 41 Cal.3d 505, 538-539 [224 Cal.Rptr. 112, 714 P.2d 1251].)

■ The jury was instructed with CALJIC No. 2.00, that "[e]vidence is either direct or circumstantial"; that "[c]ircumstantial evidence is evidence that[,] if found to be true, proves a fact from which an inference of the existence of another fact may be drawn"; and that "[a]n inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts established by the evidence."

Two such inferences or deductions of fact were set forth in CALJIC No. 2.50.01, which provided, "[i]f you find that the defendant committed a prior sexual offense, you may, but are not required, to infer that the defendant had a disposition to commit the same or similar type of sexual offenses. If you find that the defendant had this disposition, you may, but are not required, to

---

[4]Defendant filed a supplemental letter brief contending CALJIC No. 2.50.01 permits a conviction without proof beyond a reasonable doubt. He relied on two Court of Appeal opinions which have been ordered not to be published.

infer that he was likely to commit and did commit the crime or crimes of which he is accused."[5]

The jury was instructed to weigh the prior sexual offense evidence using two different standards of proof, depending on the purpose for which it chose to use that evidence.

First, in CALJIC No. 2.50.1, the jury was told that it could not consider the prior sexual offense evidence "for any purpose," unless it found that the offenses were proved *by a preponderance of evidence*. (CALJIC No. 2.50.1.)[6]

Then, in CALJIC No. 2.01, the jury was told that "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime but (2) cannot be reconciled with any other rational conclusion. [¶] Third, *each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt*. In other words, before an *inference essential to establish guilt* may be found to have been proved beyond a reasonable doubt, *each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt*." (Italics added.)

The italicized portions of CALJIC No. 2.01 explain that, if the jury concludes that CALJIC No. 2.50.01's second inference, i.e., that defendant "did commit" the present crimes, is *essential* to a finding of guilt, then "each fact or circumstance on which [that] inference necessarily rests" must be "proved beyond a reasonable doubt."

CALJIC Nos. 2.50.1 and 2.50.01 are not contrary to CALJIC No. 2.01. The former instructions provide only that an inference of guilt *may be drawn* from prior offenses that have been proved by a preponderance of evidence. They do *not* suggest that an inference so drawn is *sufficient* for a *finding* of guilt. Contrary to defendant's argument, neither CALJIC No. 2.50.01 nor any other instruction told the jury "that they could *find* that the defendant 'did commit' the charged offenses based on a preponderance of the evidence." (Italics added.) The jury could so *infer*, but it could not rely on that

---

[5]CALJIC No. 2.50.01 was revised in 1999, after the trial in this case. (See *People v. Falsetta, supra*, 21 Cal.4th at pp. 922-925.)

[6]CALJIC No. 2.50.1 told the jury: "[T]he prosecution has the burden of proving by a preponderance of the evidence that a defendant committed crimes of [*sic*] sexual offenses other than those for which he is on trial. [¶] You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other crimes or sexual offenses."

inference to *find* defendant guilty unless it found that the underlying facts had been proved beyond a reasonable doubt.[7]

As the Fifth District explained in *People v. Van Winkle* (1999) 75 Cal.App.4th 133 [89 Cal.Rptr.2d 28] (review den. Dec. 15, 1999), CALJIC Nos. 2.50.1 and 2.50.01 "do *not* provide that the current crime may be proved by a preponderance of the evidence. Instead, they expressly provide that only the *prior crimes* must be proved by a preponderance of the evidence." (*Winkle, supra,* 75 Cal.App.4th at p. 147, italics in original; accord, *People v. Fitch* (1997) 55 Cal.App.4th 172, 182-183 [63 Cal.Rptr.2d 753].)

We are aware of *People v. Vichroy* (1999) 76 Cal.App.4th 92 [90 Cal.Rptr.2d 105], in which Division Two of the Second District held that CALJIC No. 2.50.01 was constitutionally infirm for a different reason: because it told the jurors "that they could convict appellant of the current charges based solely upon their determination that he had committed prior sexual offenses," without *any* independent proof that he had committed the present crimes. (76 Cal.App.4th at p. 99.) However, on the facts of this case, it is not reasonably likely that defendant's jury understood the instruction in the manner suggested by *Vichroy.* We therefore respectfully disagree with *Vichroy.*

In *People v. O'Neal* (2000) 78 Cal.App.4th 1065 [93 Cal.Rptr.2d 248], the Fifth District recently explained that, in order to apply CALJIC No. 2.50.01 as suggested by *Vichroy,* "a juror would have to conclude that a defendant could be found guilty beyond a reasonable doubt of the currently charged crime even if no evidence whatsoever had been presented to prove the elements of the charged offense." (*O'Neal, supra,* 78 Cal.App.4th at p. 1078.)[8] In *People v. Regalado* (2000) 78 Cal.App.4th 1056 [93 Cal.Rptr.2d 83], Division Three of the Fourth District reached an identical conclusion. (At pp. 1062-1063.) In this case, there is no "reasonable likelihood" that the jury rejected all the direct evidence of defendant's sexual acts with M., but nevertheless convicted him on 16 of 17 counts because it believed, beyond a reasonable doubt, that he had committed prior sexual acts with Brenda Z. and Daisy M. (*People v. Cain* (1995) 10 Cal.4th 1, 36 [40 Cal.Rptr.2d 481,

---

[7]CALJIC No. 2.01 evidently was not given in *People v. Orellano* (2000) 79 Cal.App.4th 179 [93 Cal.Rptr.2d 866], which also considered the pre-1999 version of CALJIC No. 2.50.01. In *Orellano,* "[t]he jurors were specifically told they could infer appellant's disposition, and his guilt of the current charges, from his commission of the prior crimes, shown by a mere preponderance of evidence." (79 Cal.App.4th at p. 186.) In this case, the addition of CALJIC No. 2.01 meant that the jurors could not rely on any such inference to find defendant guilty unless the underlying facts were proved beyond a reasonable doubt.

[8]*People v. O'Neal, supra,* 78 Cal.App.4th 1065, like the present case, involved the pre-1999 version of CALJIC No. 2.50.01. (78 Cal.App.4th at p. 1079, fn. 7.)

892 P.2d 1224]; *O'Neal, supra*, 78 Cal.App.4th at p. 1078.)[9] Defendant's jury was properly instructed with CALJIC No. 2.50.01.[10]

## IV, V*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## VI

■    Defendant contends the case must be remanded to allow the trial court to consider in its discretion whether to run his "strike" convictions, counts 9 through 17, consecutively to or concurrently with one another pursuant to *People v. Deloza, supra*, 18 Cal.4th 585, which was decided seven months after the sentencing hearing. The contention has merit.

Prior to sentencing, the People filed a memorandum stating that, under the three strikes law, each of defendant's sentences of 25 years to life "must be doubled to 50 years to life," and that "the court must run each of the counts consecutive[ly]. § 667(c)(7)." The trial court expressly declined to remove the case from the operation of the three strikes law by striking defendant's 1979 prior conviction pursuant to section 1385.

In imposing sentence, the trial court stated that "the penalty for Counts Nine through Seventeen will be doubled. And Counts Nine through Seventeen will run consecutive[ly] to the sentence for Counts One through Seven, as required by the three strikes law and, in addition, because they are different offenses occurring at different times.[11] Therefore, the judgment and sentence of the Court is for—as for each of those Counts Nine through Seventeen, the defendant will be committed to the state prison for the term prescribed by law, which due to the interactions of 667.71 of the Penal Code, and 667(b) through (i) and 1170.12, of the Penal Code, is the term for each of fifty years to life consecutive."

The trial court appears to have accepted the sentencing memorandum's assertion that the three strikes law, specifically section 667, subdivision

---

[9]The present case is unlike *People v. Orellano, supra*, 79 Cal.App.4th 179, in which the prior offenses arguably were more egregious, and thus more compelling, than the current crimes. We express no opinion as to whether a jury is likely to be misled on such facts. Here, the jury was not likely to have been misled.

[10]In *People v. Brown* (2000) 77 Cal.App.4th 1324 [92 Cal.Rptr.2d 433], Division Two of the First District criticized *Vichroy* on the ground it failed to sufficiently consider the 1999 modification to CALJIC No. 2.50.01. Because that modification occurred following the trial in this case, *Brown* is not directly relevant to our discussion.

*See footnote, *ante*, page 15.

[11]We construe this statement as a finding that counts 1 through 7 occurred at different times than counts 9 through 17. The court did not purport to find, with respect to counts 9 through 17, that any count occurred at a different time than any other count.

(c)(7), mandated consecutive terms for counts 9 through 17. However, several months after sentencing, the Supreme Court ruled in *People v. Deloza, supra,* 18 Cal.4th 585 that the three strikes law does not mandate consecutive sentences for serious or violent current felony convictions that " 'are "committed on the same occasion" or "aris[e] from the same set of operative facts." ' [Citations.]" *(Id.* at p. 591, quoting *People v. Hendrix* (1997) 16 Cal.4th 508, 513 [66 Cal.Rptr.2d 431, 941 P.2d 64]; see § 667, subd. (c)(7).)[12] The record affirmatively demonstrates that the trial court had been misled and misunderstood the scope of its sentencing discretion. (Compare *People v. Rodriguez* (1998) 17 Cal.4th 253, 257 [70 Cal.Rptr.2d 334, 949 P.2d 31] [remand ordered where misunderstanding of scope of § 1385 discretion is affirmatively shown] with *People v. Fuhrman* (1997) 16 Cal.4th 930, 945 [67 Cal.Rptr.2d 1, 941 P.2d 1189] [no remand where record is silent].)

"[T]he term 'same occasion' refers at least to a close temporal and spatial proximity between the acts underlying the current convictions." *(People v. Deloza, supra,* 18 Cal.4th at p. 595.) Here, the record shows a close temporal and spatial proximity between several of the disputed counts; the evidence does not support an implied finding that each count occurred on a separate occasion.

Counts 9 through 13 occurred at the motel on Auburn Boulevard. M. described three acts of intercourse, three acts of oral copulation, one touching of her breast, seven or eight touchings of her private area, and one touching of defendant's penis. The touching of M.'s breast, one touching of her private area and one act of intercourse occurred in a session that lasted "all night" and was followed, at an unspecified interval, by one act of oral copulation. M. did not indicate when the remaining acts occurred. Thus, the record shows at least two separate occasions, but it fails to show five. Under *Deloza,* the trial court had discretion to run three of these five counts concurrent with the other two.

Counts 14 through 17 occurred at a campsite by the river. M. described four touchings of defendant's penis and "more than ten" touchings of her private area. However, she did not indicate whether any of these acts occurred on separate occasions. Under *Deloza,* the trial court had discretion to run three of these four counts concurrent with the others.

---

[12]The issue in *People v. Hendrix, supra,* 16 Cal.4th 508 was "whether consecutive sentences are mandatory under subdivision (c)(6), (c)(7), or subdivision (e)(2)(B), when the defendant has two or more prior felony convictions within the meaning of subdivision (d), and commits serious or violent felonies against multiple victims at the same time." *(Id.* at p. 511, fn. omitted.) Although *Hendrix* was on the books at the time of defendant's sentencing hearing, it was not directly relevant because all of defendant's offenses were against the same victim.

## DISPOSITION

Defendant's convictions on counts 1 and 2 are reversed. His remaining convictions are affirmed but the sentences thereon are vacated. On remand, the trial court shall designate a principal determinate term, consider in its discretion whether to run the specified indeterminate terms concurrently rather than consecutively, and resentence defendant accordingly.

Sims, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 29, 2000. Mosk, J., was of the opinion that the petition should be granted.