Filed 12/24/13  P. v. Guzman CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B245583 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA082065) |
| v. | |
| GERRALDO GUZMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steven R. Van Sicklen, Judge.  Affirmed.

Alan Siraco, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Gerraldo Guzman appeals from the judgment in which a jury convicted him of attempted willful, deliberate and premeditated murder (Pen. Code., §§ 667, 187, subd. (a).) The jury also found true the allegations that appellant personally used a deadly weapon, a knife (Pen. Code, § 12022, subd. (b)(1)), and personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)). The trial court sentenced appellant to life in prison with the possibility of parole, plus an additional four years.

Appellant contends there was no substantial evidence of premeditation and deliberation, the trial court gave prejudicially erroneous jury instructions, and appellant received ineffective assistance of counsel. We affirm.

## FACTS

On August 21, 2011, the victim, Angie Hernandez (Hernandez), went to a bar in Redondo Beach, California, with her friend Charmaine Mettler (Mettler) and Mettler's boyfriend. Hernandez had several beers. Appellant was at the bar and repeatedly asked Mettler if he could buy her a drink. Each time Mettler responded that she already had a date. Mettler left the bar around 11:00 p.m. with her boyfriend. Hernandez stayed at the bar.

Around 2:00 a.m., Hernandez left the bar with some other friends. She told her friends to go on without her because she lived down the street and she could walk home alone. Hernandez crossed the street and sat down on a bench for two to three minutes while she decided if she would go home or go back to the bar. She decided to go back to the bar.

As Hernandez began walking back to the bar, appellant started walking towards her from the parking lot. Appellant then rushed towards Hernandez and placed his hands on her neck. Hernandez immediately began to struggle with appellant. She could not scream loudly because she had lost her voice earlier. During the struggle, she fell to the ground and appellant fell on top of her. Appellant held Hernandez down, and she was unable to get out from underneath him. As Hernandez struggled, appellant removed a knife from his right pants pocket and raised it towards her neck. When Hernandez tried to push appellant's hand away, appellant cut her fingers with the knife. Hernandez

2

became tired and unable to put up a fight any longer. She felt the knife poke her neck and then the blade stabbing her. She thought she was going to die. Appellant looked angry. Hernandez then pleaded in Spanish with appellant to stop, repeating that she had children at home.

Scott Fraser (Fraser), who lived near the bar, was walking his dog at the time of the attack. He noticed the struggle and heard a strange noise he had never heard before, "like a gurgling scream, moan, all combined into one." Fraser yelled "Hey," and appellant suddenly stopped and got off Hernandez. Appellant turned and stared at Fraser before running away.

A band that had performed at the bar that night was loading its equipment into a truck when appellant approached and stood silently watching for about five minutes. One of the band members watched appellant walk away. About five to 10 minutes later, Hernandez walked over to the band, bleeding and saying she had been stabbed.

Two band members told the bartender to call the police. Based on their description of appellant, the bartender directed the police to appellant's house. When the police arrived at appellant's house, he was in the living room. Appellant matched the description of the suspect and had blood on his left sock and the left side of his face, but he was not wearing a shirt. The officers ordered appellant and the other people in the house to go outside. When asked his name, appellant gave a fake name.

The police searched appellant's house. Inside a trash can at the rear of the house, officers recovered a pair of bloodied jeans and a folding knife with a camouflage handle. There was blood on the blade and handle. Officers took Fraser to a field show-up, where he identified appellant as the man who had attacked Hernandez.

Meanwhile, at the hospital, Hernandez received eight stitches to her neck wound, and surgery to repair a tendon in her right ring finger. Her treating physician was particularly concerned about her neck wound, because of its proximity to her major arteries, veins, and airway.

3

Hernandez was shown a photographic six pack, and identified two men, including appellant.  In court, she identified appellant as her attacker. Both the bartender and Mettler identified appellant from the six pack.

DNA taken from appellant's sock, the recovered jeans and the knife matched Hernandez's DNA.

## DISCUSSION

### I.  Substantial Evidence Supports the Jury's Finding of Premeditation and Deliberation

Appellant contends the evidence was insufficient to support the jury's finding that he acted with premeditation and deliberation.  We disagree.

#### A.  Standard of Review

In reviewing a challenge to the sufficiency of evidence, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence which is reasonable, credible, and of solid value, such that a reasonable trier of fact could have found beyond a reasonable doubt that the attempted murder was willful, deliberate, and premeditated.  (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1068–1069 (*Mendoza*); *People v. Johnson* (1980) 26 Cal.3d 557, 578.)  In determining whether the record contains substantial evidence of premeditation and deliberation, an appellate court draws all reasonable inferences in support of the finding.  (*People v. Perez* (1992) 2 Cal.4th 1117, 1124.)  When the circumstances reasonably justify the jury's findings, our opinion that the circumstances might also be reasonably reconciled with contrary findings does not warrant reversal of the judgment.  (*Mendoza, supra*, 52 Cal.4th at p. 1069.)

#### B.  Attempted Murder

An attempted murder is "premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse."  (*People v. Stitely* (2005) 35 Cal.4th 514, 543.)  "Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance.  [Citations.]  'The process of premeditation and deliberation does not require

4

any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." [Citations.]' [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080; *Mendoza, supra*, 52 Cal.4th at p. 1069.)

In *People v. Anderson* (1968) 70 Cal.2d 15, our Supreme Court identified three types or categories of evidence pertinent to the determination of premeditation and deliberation: (1) planning activity, (2) motive, and (3) manner of killing. (*Id*. at p. 27.) The Supreme Court has made clear, however, that *Anderson* "'"did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." [Citations.]'" (*Mendoza, supra*, 52 Cal.4th at p. 1069.)

### 1. Planning Activity

Appellant argues there was no evidence that he planned the attack because he was only carrying an ordinary folding knife and he did not pull out the knife prior to the attack. We reject appellant's claim that a folding knife is not a deadly weapon, as compared to a switchblade. A knife is an inherently dangerous object, and, in this case, nearly killed the victim. The jury could easily infer—from the fact that appellant was armed with a knife at a bar—that he had considered the possibility of a violent encounter that included the use of deadly force. As the People note, there was no reason a knife was necessary to attack a defenseless woman, who had been drinking and who was alone, other than if there was a preconceived plan to use deadly force. (See *People v. Lee* (2011) 51 Cal.4th 620, 636 [evidence of planning where defendant brought a loaded handgun with him on the night the victim was killed, indicating he had considered the possibility of a violent encounter]; *People v. Steele* (2002) 27 Cal.4th 1230, 1250 [evidence defendant carried the fatal knife into the victim's home makes it "'reasonable to infer that he considered the possibility of homicide from the outset'"]; *People v. Elliot* (2005) 37 Cal.4th 453, 471 [same].)

### 2. *Motive*

Appellant argues there was no evidence of motive, since he had no prior or current relationship with Hernandez. In closing argument, the prosecutor suggested to the jury that because Hernandez's friend, Mettler, had declined appellant's offers to buy her a drink, he was similarly rejected by Hernandez. Hernandez testified that appellant looked angry when he was stabbing her. (See *People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102 [observing that the law does not require a "'rational'" motive for murder; even anger, however "'shallow and distorted,'" at the way the victim spoke to the defendant may be a motive for murder].) But even if the evidence did not support these motives, the lack of any apparent motive does not undercut the verdict, since motive is not necessary for premeditation. (*People v. Edwards* (1991) 54 Cal.3d 787, 814.)

### 3. *Manner of Killing*

Appellant argues that his stabbing of Hernandez's neck was "ad hoc," "unsuccessful" and only resulted in a "superficial wound." But the evidence showed that appellant sought out Hernandez, pinned her down and prevented her escape despite her struggles, stabbed her hand when she tried to fight off the knife, stabbed her in the neck, and did so near major arteries, veins, and her trachea. (See *People v. Pride* (1992) 3 Cal.4th 195, 248 [jury could infer that murder was premeditated and deliberated where victim was stabbed multiple times while pinned down and rendered helpless].)

In sum, we are satisfied that there was substantial evidence of premeditation and deliberation.

## II. CALCRIM No. 3426 and Voluntary Intoxication

Appellant contends that the judgment must be reversed because the trial court prejudicially erred when instructing the jury on voluntary intoxication. Specifically, he argues that CALCRIM No. 3426 was legally erroneous as given because it failed to instruct the jury that voluntary intoxication is relevant to the mental states of premeditation and deliberation.

The jury was instructed with CALCRIM No. 3426 as follows: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with the intent to kill. [¶] A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] In connection with the charge of Attempted Murder, the People have the burden of proving beyond a reasonable doubt that the defendant acted with the intent to kill. If the People have not met this burden, you must find the defendant not guilty of Attempted Murder. [¶] You may not consider evidence of voluntary intoxication for any other purpose. Voluntary intoxication is not a defense to Assault with a Deadly Weapon, Personal Use of Deadly Weapon or Personal Infliction of Great Bodily Injury."

Appellant correctly asserts that voluntary intoxication is admissible to support a reasonable doubt that the defendant actually premeditated or deliberated a charged attempted murder. "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (Pen. Code, § 29.4, subd. (b); *People v. Castillo* (1997) 16 Cal.4th 1009, 1016; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1368.) The instruction as given was therefore incomplete (not legally erroneous) because it did not instruct the jury that it could also consider voluntary intoxication for the purpose of determining whether appellant actually premeditated or deliberated.

But the error was harmless under either *Chapman v. California* (1967) 386 U.S. 18, 24 or *People v. Watson* (1956) 46 Cal.2d 818, 836. Evidence of appellant's intoxication was negligible. Appellant points to the testimony of two witnesses: Mettler and one of the responding officers, Sergeant Fabian Saucedo. The following colloquy took place on Mettler's direct testimony: "Q. Did it appear to you that the defendant had been drinking? [¶] A. I can't say either way. No. I didn't notice that. There was nothing obvious. [¶] . . . [¶] Q. Did it appear he had difficulty walking. [¶] A. No. [¶]

7

Q. Did it appear his eyes were red or watery? [¶] A. No. [¶] Q. Did you smell alcohol coming from him? [¶] A. No." On cross-examination, Mettler repeated that she did not see appellant drinking, or swaying, "or anything like that." Mettler did not remember telling a detective that appellant was "drunk," but added that if she had said that, her "memory [was] probably . . . better at that time."

When Sergeant Saucedo was asked if he smelled alcohol "coming from" appellant, he responded, "I believe I did, Yes." But Sergeant Saucedo also testified that that it did not appear to him that appellant was "under the influence" of alcohol, that he did not recall seeing appellant's eyes looking watery or bloodshot, and that he did not see appellant stumbling or having difficulty walking. Appellant points to no other evidence of his intoxication.

The evidence showed that appellant had the presence of mind to pull out a knife from his pocket while pinning Hernandez down, open the blade, and stab her neck, as opposed to a less critical area of her body. Appellant also had the presence of mind to flee the scene immediately when he recognized that a witness saw him, to attempt to discard all evidence of his crime, and to give officers a fake name. The jury could reasonably infer that appellant was not so intoxicated that he was unable to premeditate and deliberate killing Hernandez.

## III. No Ineffective Assistance of Counsel

Appellant contends that the judgment must be reversed because he received ineffective assistance of counsel. Specifically, he argues that his counsel was ineffective for failing to request that CALCRIM No. 3426 be modified to include that voluntary intoxication was relevant to whether appellant premeditated and deliberated murder.

To establish a claim of ineffective assistance of counsel, a defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) On appeal, the reviewing court "need not determine whether counsel's performance was deficient before

8

examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland, supra*, at p. 697; *In re Cox* (2003) 30 Cal.4th 974, 1019–1020.) "[P]rejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Maury, supra*, 30 Cal.4th at p. 389; *Strickland, supra*, at pp. 693–694.) It is not enough for a defendant to show that errors had some conceivable effect on the outcome of the case. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217.)

Because we have already concluded that the instructional error was harmless in light of the paltry evidence of intoxication and the jury's reasonable inference that appellant was not so intoxicated that he was unable to premeditate and deliberate murder, the failure of appellant's trial counsel to request the suggested modification of CALCRIM No. 3426 was not prejudicial.

## IV. CALCRIM No. 372 and Flight

Appellant contends that the judgment should be reversed because the standard instruction on flight given to the jury was impermissibly argumentative.

As an initial matter, appellant has forfeited his claim by failing to object to CALCRIM No. 372 in the trial court. (*People v. Loker* (2008) 44 Cal.4th 691, 705–706 [by not objecting to unmodified form of standard flight instruction, defendant forfeited appellate argument that the instruction should have been modified].)

In any event, appellant's claim fails on the merits. The trial court instructed the jury with CALCRIM No. 372 as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

9

Appellant argues that the instruction is argumentative because it is not neutral and impermissibly invites the jury to infer his guilt. A jury instruction is argumentative if it is "'"'of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence." [Citations.]'" (*People v. Lewis* (2001) 26 Cal.4th 334, 380, quoting *People v. Hines* (1997) 15 Cal.4th 997, 1067–1068.) But appellant's argument does not consider the instruction as a whole. It is well-established that the propriety of jury instructions is determined from "'the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'" (*People v. Jeffries* (2000) 83 Cal.App.4th 15, 22; *People v. Paysinger* (2009) 174 Cal.App.4th 26, 31.)

The instruction is phrased in permissive, not mandatory, terms, using the words "if" and "may." The jury is also specifically instructed that "it is up to you" to decide the meaning and importance of flight, if the jury concludes the defendant fled. More importantly, the final sentence of the instruction states that "evidence that the defendant fled cannot prove guilt by itself." As the reviewing court stated in *People v. Paysinger, supra*, 174 Cal.App.4th at page 31, this final sentence "positively refutes" the argument that the instruction suggests that evidence of flight is sufficient to show guilt. Appellant's argument, therefore, is without merit based on a review of the instruction as a whole.

### DISPOSITION

The judgment is affirmed.

ASHMANN-GERST, J.

We concur:

BOREN, P. J.
FERNS, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10