Filed 5/13/24  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>VICTOR MANUEL LOPEZ,<br><br>　　　Defendant and Appellant. | F085887<br><br>(Super. Ct. No. PCF373414)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found defendant Victor Manuel Lopez guilty of first degree murder and corporal injury to a spouse. As to the corporal injury to a spouse, the jury found true that defendant inflicted great bodily injury. The trial court sentenced defendant to a term of 25 years to life for murder and stayed the term for corporal injury to a spouse on which the court awarded custody credits. The court awarded no custody credits as to the term for murder.

Defendant raises two issues on appeal. First, he contends his sentence should be vacated and the matter remanded for resentencing because the trial court was misinformed of its discretion under Penal Code section 654[1] to stay the sentence on either count. He argues that the prosecutor's reliance on former section 654, mandating imposition of the greater term where two convictions arise from the same conduct, in the sentencing memorandum prevented the court from exercising informed discretion to choose which term to stay. Second, defendant asks us to correct the judgment to award presentence custody credits against the indeterminate term for murder.

The People disagree that resentencing is required but agree that defendant is entitled to actual presentence custody credits against the imposed and not stayed term. However, the People contend that the trial court improperly awarded defendant conduct credits, which cannot be awarded to convicted murderers.

We modify the judgment to award defendant actual presentence custody credits— but not conduct credits—against the only term imposed and not stayed. As modified, we affirm.

## PROCEDURAL BACKGROUND

On February 13, 2020, the District Attorney of Tulare County filed an information charging defendant with first degree murder (§ 187, subd. (a); count 1) and corporal

---

[1] Undesignated statutory references are to the Penal Code.

2.

injury to a spouse (§ 273.5, subd. (a); count 2). The information further alleged as to count 2 that defendant personally inflicted great bodily injury (§ 12022.7, subd. (e)).

On November 16, 2022, the jury found defendant guilty on both counts and found the special allegation true.

On January 17, 2023, the prosecutor filed a sentencing memorandum. In it, the prosecutor quoted section 654, which provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision" (§ 654, subd. (a)). Contrary to section 654's permissive language, the prosecutor erroneously argued that the trial court was required to impose a mandatory stay of count 2, citing case law decided under former section 654's mandatory stay of sentences on terms that did not provide for the longest possible term: *People v. Duff* (2010) 50 Cal.4th 787, 795–796 and *People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309. Thus, because count 1 afforded the longest possible term, the prosecutor erroneously argued that the court was required to stay the term for the sentence on count 2.

On February 1, 2023, defendant's trial counsel filed a statement in mitigation. In it, counsel did not challenge the prosecutor's reliance on former section 654's mandatory standard, nor did counsel request that the trial court exercise its discretion under section 654 to stay the sentence on count 1.

Prior to the February 2, 2023 sentencing hearing, the trial court received and signed an acknowledgement that it read and considered, the probation officer's report. The report recommended that the court sentence defendant to an indeterminate term of 25 years to life on count 1 and to the upper term of four years, plus five years for the section 12022.7, subdivision (e) enhancement, and stay the total 9-year term on count 2 but did not explain that the court had discretion not to do so.

At the February 2, 2023 sentencing hearing, regarding the probation report, defendant's trial counsel indicated only one issue with the statement of facts.

3.

Defendant's counsel neither requested that the trial court consider staying the punishment on count 1 under section 654 nor raised the misstatement of law in the sentencing memorandum.

The trial court sentenced defendant to 25 years to life on count 1 and four years (the upper term), plus five years for the section 12022.7, subdivision (e) enhancement, stayed pursuant to section 654, on count 2. The court awarded no custody credits as to count 1 but awarded 1,529 days of actual presentence custody credits and 229 days of conduct credits, for a total of 1,758 days of credits as to count 2.

On March 8, 2023, defendant filed a notice of appeal.

## FACTUAL BACKGROUND

Defendant and his wife, Samantha,[2] started dating in 2008 and were married for approximately three years by 2018, with two children together and two children from Samantha's prior relationship with Luis. Samantha and defendant lived in a house in Porterville with all four children (the children).

Samantha and defendant had a tumultuous relationship. Samantha confided in multiple people, including her manager, Denise, her coworker, Savanna, and Luis that defendant abused her, including threatening her life with a firearm. Samantha told Savanna about defendant's lack of employment, his reliance upon his mother during difficult times, and his problems with alcohol. Samantha told Denise that she planned to move away from defendant. On May 25, 2018, at 4:00 a.m., Luis drove for about three and a half hours to Porterville after Samantha called to tell him that she was scared because defendant threatened her.

On November 26, 2018, around 8:00 p.m., the children heard Samantha and defendant loudly arguing behind their closed bedroom door. Samantha was heard yelling,

---

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

"[G]et your stuff, I'm kicking you out." Samantha put the children to bed but did not wake them for school as usual the next day. Defendant instead indicated he would take the children to Los Angeles.

When Samantha did not appear for work on November 27, 2018, Denise became concerned given her prior conversations with Samantha about defendant's abuse. Denise went to Samantha's home and confronted defendant. Defendant told Denise that Samantha left during the night. Concerned and uneasy, Denise called the police to conduct a welfare check. Officers soon arrived. Defendant told the officers that he and Samantha argued the night before, and Samantha left with a friend. Without permission to enter the home, the officers left.

Later that day, Luis initiated a welfare check upon learning from Denise that Samantha did not show for work. Officers returned to Samantha's home that afternoon. Defendant communicated with them behind the screen door and appeared nervous and unfriendly. Defendant denied the officers entry and shut and locked the door. After the discussion with officers, one of the children observed him "running around the house … grabbing things."

An officer surveilling the home's rear saw defendant leap from a window and run away. Officers pursued defendant and found him rolled in a large rug in another person's backyard shed. Officers detained defendant, who, sobbing, asked, "My kids aren't going to see their mother like that?"

Upon returning to Samantha's home, an officer found three of the children watching television, and Samantha's body in an adjacent bedroom, lying face-down under blankets with a green plastic grocery bag covering her head. Defendant's fingerprints were found on the plastic bag. Defendant's blood revealed the presence of methamphetamine. Samantha died from manual suffocation: blockage of the nasal and oral airways resulting in loss of consciousness after a minute and death within another three-to-five minutes.

**DISCUSSION**

## I.    The trial court's discretion under section 654

Defendant contends the trial court was unaware of its section 654 discretion to stay the sentence on count 1.  Defendant points to the prosecutor's sentencing memorandum, which cited the correct version of section 654 but erroneously argued based on citations to authorities relying on former section 654's language mandating stay of the lesser sentence and allowing the court no discretion to stay the sentence on count 1.  Defendant argues that this shows, or raises a sufficient suspicion, that the court misunderstood or was ignorant of the scope of its discretion under section 654, thus requiring remand for resentencing.  We disagree.

### A.  Forfeiture

Defendant forfeited his argument by failing to raise it below.  "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal."  (*People v. Scott* (1994) 9 Cal.4th 331, 356.)  Defendant failed to raise the court's section 654 sentencing discretion and the misstatement of law in the prosecutor's sentencing memorandum both in his statement in mitigation and at the sentencing hearing.  Though defendant's forfeiture is dispositive, we would reach the same outcome on the merits.  We exercise our discretion to reach the merits of defendant's claim to forestall any eventual claim of ineffective assistance of counsel.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court has authority to reach a claim not cognizable on appeal]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing court may exercise discretion to consider claims not cognizable on appeal to forestall ineffective assistance of counsel arguments].)

### B.  Relevant legal standards

We review the trial court's exercise of sentencing decision for abuse of discretion. (*People v. Shenouda* (2015) 240 Cal.App.4th 358, 368.)  Courts must make sentencing

decisions with "informed discretion." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) Essential to "informed discretion" is the court's awareness of its own discretionary authority. (*Ibid*.) We overturn the court's exercise of informed discretion only if the party challenging the sentence demonstrates such exercise was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)

Generally, we presume the trial court properly applied established law in exercising its sentencing discretion. (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377; *People v. Weddington* (2016) 246 Cal.App.4th 468, 492 (*Weddington*).) Neither the court's failure to reference alternative sentencing choices nor a record "silent concerning whether the *trial court* misunderstood its sentencing discretion" undercuts this presumption. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1229, italics added (*Brown*); accord, *Weddington*, at p. 492.) We will not remand for resentencing where the record demonstrates the court's awareness of its sentencing discretion. (*Brown*, at p. 1228.) In this case, our analysis centers on whether the court understood its discretion under section 654.

There is no dispute that section 654, as amended by Statutes 2021, chapter 441, section 1, was in effect at the time of defendant's sentencing. It provides that "[a]n act or omission that is punishable in different ways by different provisions of law *may* be punished under either of such provisions." (§ 654, subd. (a), italics added.) Courts routinely read section 654's clear language as "grant[ing] trial courts the discretion to choose which sentencing provision to apply when the courts sentence defendants who commit criminal acts that are punishable under more than one criminal provision—i.e., trial courts are no longer obligated to impose the sentence under the provision that contains the longest sentence and may, instead, stay the term of the longer sentence and apply an applicable provision that contains a shorter term." (*People v. Farias* (2023) 92 Cal.App.5th 619, 654, review granted Sept. 27, 2023, S281027; accord, *People v. Aguayo* (2022) 13 Cal.5th 974, 992, fn. 6.)

*C. Analysis*

The key issue is whether the trial court misunderstood its section 654 sentencing discretion. Defendant contends that, though the court did not explain its sentencing decision, the legal error misstating the scope of the court's sentencing discretion under section 654 in the prosecutor's sentencing memorandum means the record is not silent as to the court's understanding of its discretion. We disagree.

Defendant cites *People v. Jeffries* (2000) 83 Cal.App.4th 15, 25–26, in support. There, the Third Appellate District ordered resentencing after the trial court misstated its discretion *on the record*. (*Ibid*.) That misstatement aligned with an identical misstatement in the prosecutor's sentencing memorandum. (*Ibid*.) The court observed, in dicta, that it "appear[ed]" that the trial court followed the erroneous sentencing memorandum. (*Ibid*.) The dispositive fact in *Jeffries* was the court's own misstatement of law, not the prosecutor's misstatement of law. Here, defendant offers no evidence that the court relied on the prosecutor's legal error at sentencing.

Nevertheless, defendant argues that a trial court's sentencing decision should be remanded for resentencing if it "may have been" based on a legal error. Defendant relies on the statement that " '[a] court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Interpreting our Supreme Court's language in *People v. Gutierrez* as defendant suggests, i.e., requiring remand for resentencing given the possibility of a lack of informed discretion where the record is silent, would nullify the presumption that, where the record is silent, the trial court exercised informed discretion. (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377; *Weddington*, *supra*, 246 Cal.App.4th at p. 492; *Brown*, *supra*, 147 Cal.App.4th at p. 1229.) A record silent as to the court's understanding of its sentencing discretion always includes the possibility that the court misunderstood its

8.

sentencing discretion.  But it is not for this court to speculate as to how sentencing discretion might have been exercised.  (*People v. Barocio* (1989) 216 Cal.App.3d 99, 110.)  Without evidence of the trial court's reliance on the prosecutor's error in this case, we will not speculate about whether the court misunderstood its sentencing discretion.

Nevertheless, defendant argues that we should not presume that the trial court was aware of its section 654 sentencing discretion because (1) the court made an error regarding presentence custody credits and (2) sentencing laws are complex.  First, because we presume the court followed the law unless shown otherwise (*Carmony*, *supra*, 33 Cal.4th at pp. 376–377), we cannot presume that the court's credits error implies an error in its understanding of section 654's discretion.  The former is reflected in the record; the latter is not.  Second, the complexity of California's sentencing laws does not alter our presumption that the court followed the law.  (See *Carmony*, at pp. 376–377.)  The record does not demonstrate that the prosecutor's erroneous reliance on case authority predating the current version of section 654 overcame the clear language of that section granting sentencing discretion to stay the term on either count.

Finally, we note that the probation report *recommended* that the trial court impose and not stay the punishment on count 1 and stay the punishment on count 2 "pursuant to [section] 654."  The court signed the probation report, acknowledging that it read and considered it.  The probation report's recommendation under section 654 fits with the court's discretion.  We see no reason to speculate that the court blindly followed the prosecutor's error rather than deciding to adopt the probation report's recommendation:  a permissible exercise of its discretion under section 654.

In summary, the record does not indicate that the trial court relied upon or adopted the prosecutor's misstatement of law in exercising its sentencing discretion.  Given this silence and the alternative sentencing decisions available to the court, we will not disturb the court's sentencing decision on appeal.  (See *Brown*, *supra*, 147 Cal.App.4th at p. 1229.)

9.

## II. Defendant's entitlement to credits

We hold that (1) the trial court should have awarded defendant actual presentence custody credits against the minimum indeterminate term on count 1, and (2) defendant is unentitled to 229 days of local conduct credits on either count 1 or count 2's term.

The trial court granted credits for 1,529 actual days served against the stayed term on count 2 but not on count 1. Section 2933.2 denies conduct credits, but not credits for actual time served, to convicted murderers. (*People v. Chism* (2014) 58 Cal.4th 1266, 1336.) Section 2900.5 applies credits for time served to "all felony and misdemeanor convictions." (§ 2900.5, subd. (a).) Consequently, convicted murderers are "entitled to presentence credits for time served." (*People v. Herrera* (2001) 88 Cal.App.4th 1353, 1366.) The award of presentence custody credits is mandatory, not permissive, given the above authority and the policy underlying section 2900.5. (See *People v. Bruner* (1995) 9 Cal.4th 1178, 1183–1184 ["the purpose of section 2900.5 is to ensure that one held in pretrial custody on the basis of unproven criminal charges will not serve a longer overall period of confinement upon a subsequent conviction than another person who received an identical sentence but did not suffer preconviction custody"].)

In this case, because the court was not permitted to award presentence custody credits only as to the sentence for count 2 but required to award them as to the sentence for count 1, upholding the abstract of judgment as it stands would frustrate the clear purpose and policy of section 2900.5. Therefore, it was error for the court to award presentence custody credits only to defendant's sentence for count 2 but not for count 1. The court should have applied 1,529 actual days of presentence custody credits to defendant's sentence for count 1.

We also agree with the People that defendant is not entitled to the 229 days of local conduct credits applied by the trial court against defendant's term on count 2. A convicted murderer is unentitled to credits "as specified in Section 2933 or Section 2933.05" for, relevant here, good conduct. (§ 2933.2, subd. (a); see *People v.*

10.

*McNamee* (2002) 96 Cal.App.4th 66, 74) [holding that § 2933.2 bars "presentence conduct credits against determinate as well as indeterminate terms of a murderer's sentence"].)

We modify the judgment to award defendant 1,529 days of actual presentence custody credits against the only term imposed and not stayed, count 1, and strike the award of 229 days of local conduct credits against the term on count 2.

## DISPOSITION

The judgment is modified to award 1,529 days of actual presentence custody credits (§ 2933.2) against defendant's sentence on count 1 and to strike the award of conduct credits against his sentence on count 2.  As modified, the judgment is affirmed. The trial court is directed to prepare amended abstracts of judgment for both counts 1 and 2, reflecting the modifications to defendant's actual presentence custody credits and conduct credits, and to forward certified copies of each amended abstract of judgment to the Department of Corrections and Rehabilitation.


LEVY, Acting P. J.

WE CONCUR:


DETJEN, J.


SMITH, J.

11.