Filed 1/7/25  P. v. Cruz CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080648 |
| v. | (Super.Ct.No. INF1900521) |
| PABLO GONZALES CRUZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James B. Jennings, Judge. (Retired judge of the Santa Barbara Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; reversed in part and remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

After a jury convicted Pablo Gonzales Cruz of attempted robbery, robbery, and firearms offenses, the trial court sentenced him under the three strikes law to state prison for 25 years to life plus a four-year determinate sentence. On appeal, defendant argues: (1) the trial court erred by denying his motion for new trial because his trial attorney failed to adequately cross-examine a prosecution witness and, therefore, he received ineffective assistance of counsel; (2) the trial court erred by denying his request pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) to dismiss an allegation that he suffered a prior "strike" conviction for purposes of sentencing under the three strikes law; and (3) the abstract of judgment and minute order from the sentencing hearing must be corrected to accurately reflect the oral pronouncement of sentence and to strike a restitution fine and parole revocation restitution fine.

The People concede the fines must be stricken but argue the matter must be remanded for resentencing because the trial court made additional errors with respect to whether sentences should be concurrent or consecutive.

Because defendant has not established his trial attorney rendered ineffective assistance of counsel by not more rigorously cross-examining a witness, the trial court did not abuse its discretion by denying his new trial motion. Nor has he established the

trial court abused its discretion when it denied his *Romero* request. However, because we remand for resentencing, defendant may renew his request at that time.[1]

I.

FACTS AND PROCEDURAL BACKGROUND[2]

By information, the People charged defendant with attempted robbery (Pen. Code,[3] §§ 664, 211, count 1), robbery (§ 211, count 2), unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1), count 3), and unlawful possession of ammunition by a felon (§ 30305, subd. (a), count 4). The People alleged defendant personally used a firearm during the commission of counts 1 and 2 (§§ 12022.5, subd. (a), 1192.7, subd. (c)(8)), and that defendant suffered two prior serious felony convictions for purposes of the three strike law (§§ 667, subds. (a), (c), (e)(1), 1170.12, subd. (c)(1)).

---

[1] In a separate petition for writ of habeas corpus (case No. E083771), defendant argues the police failed to preserve potentially exculpatory evidence—to wit, his vehicle and any DNA evidence that might have been located inside it—and his trial attorney rendered ineffective assistance of counsel by not arguing to the jury the relevance of that evidence. By separate order, we summarily deny the petition.

[2] Defendant does not challenge the sufficiency of the evidence to support his convictions. As explained, *post*, we conclude defendant has not established his trial attorney rendered deficient representation and, therefore, the trial court did not abuse its discretion by denying his motion for new trial. Because we find no deficient representation, we need not consider whether defendant suffered any prejudice, which invariably would have required us to consider the strength of the People's evidence. (*Strickland v. Washington* (1984) 466 U.S. 668, 695-696 (*Strickland*); *In re Gay* (2020) 8 Cal.5th 1059, 1087.) Therefore, we need not recite in detail the facts of the offenses. (See *People v. Chadd* (1981) 28 Cal.3d 739, 743-744 ["Because of the limited nature of the issue [on appeal], we need not recite the facts of the case in detail."].)

[3] All further statutory references are to the Penal Code unless otherwise indicated.

Around 9:00 p.m. on the evening of December 23, 2018, a man armed with a rifle and dressed all in black and with a beanie covering his face tried to rob the Apple Market in Thermal after the store was closed. When the man was unable to enter the store, he drove off and at approximately 9:15 p.m. he entered and robbed the nearby Valley Market and got away with about $1,700. One of the employees of the Apple Market described the man as about 6 feet tall with a thin build. Ms. Silva, the cashier of the Valley Market, also described the man as about 6 feet tall with a thin build. Based on the man's light skin and eyes, Silva believed he was Hispanic.

While investigating a previous, unrelated robbery, the police had impounded defendant's Nissan Maxima that matched the license plate of the vehicle used in the attempted robbery of the Apple Market. A pistol, methamphetamine, ammunition, and a black mask had been discovered inside. While seizing the vehicle, police received a report from defendant's nephew that defendant had claimed he had been robbed at gunpoint. A week later defendant retrieved the vehicle from the impound lot.

Believing defendant's vehicle matched the description of the vehicle used in the attempted robbery of the Apple Market and the robbery of the Valley Market, police responded to defendant's residence where they found his Nissan Maxima. Police searched defendant's bedroom and found ammunition, black pants, and a black beanie. In the vehicle they discovered a rifle, more ammunition, and a pair of black gloves and a maroon bag like those depicted in video footage from the robbery. The license plate to

4

defendant's vehicle looked like a sharpie pen had been used to modify the license plate number.

Many of the items seized from defendant's room and vehicle were tested for DNA, but they either lacked any DNA evidence or they had too many contributors to make an identification. A woman's DNA was found on some of the items. During the investigation, police eliminated two of defendant's brothers—who lived at the same residence—as suspects based on their stature and weight. Defendant often loaned his vehicle to his girlfriend and to a third brother.

A friend testified he picked up defendant around 9:00 p.m. on the evening of the robberies, and the friend and his wife were with defendant until midnight. Defendant's girlfriend testified she was at defendant's residence on the afternoon of the robberies and borrowed defendant's vehicle. She returned it around 9:00 or 10:00 p.m. that evening and, believing defendant was home, left the keys at the residence. The girlfriend then got a ride to defendant's friend's house and found defendant there.

A jury found defendant guilty on counts 1 through 4 and found true the allegations that defendant personally used a firearm during the commission of counts 1 and 2. In a separate proceeding, the trial court found true the allegations that defendant suffered two prior serious felony convictions.

The trial court sentenced defendant pursuant to the three strikes law to state prison for 25 years to life for each conviction on counts 1 and 2, to be served concurrently, and deemed count 1 to be the principal count. For counts 3 and 4, the court sentenced

defendant to the middle term of four years for each, stayed the sentence on count 4 pursuant to section 654, and directed the sentence on count 3 to run consecutively to the indeterminate term on count 1. For the firearm enhancements on counts 1 and 2, the court sentenced defendant to 10 years each to be served concurrently to the term on count 1. Finally, for defendant's two prison priors, the court sentenced him to five years each to be served concurrently with the sentence on count 1.

Defendant timely appealed.

## II.

## DISCUSSION

A.      *The Trial Court Did Not Abuse Its Discretion When It Denied Defendant's Motion for New Trial.*

Defendant argues the trial court erred by denying his motion for new trial because he established that he had been denied the effective assistance of counsel, in violation of his rights under the Sixth Amendment to the United States Constitution. Specifically, defendant argues his trial attorney was deficient by not cross-examining and/or impeaching the testimony of the cashier of the Valley Market that the robber's eyes were "light" with the cashier's prior statement to the police that the robber's eyes were green. We find no abuse of discretion.

          i.      Additional background.

Ms. Silva testified the man who robbed the Valley Market was thin, light-skinned, and about six feet in height. Although the man had his face covered, Silva saw his eyes

and part of his face, including his nose. Silva testified the man looked Hispanic from his light skin tone. When the prosecutor asked if there was anything distinctive about the man's eyes, Silva testified they were "light," though she could not remember their exact color. When the prosecutor asked, "They weren't dark brown or black?" Silva answered, "No." On cross-examination, Silva again testified she thought the man was Hispanic from his eyes and the part of his face that she could see.

In support of the motion for new trial, defendant's new attorney declared she had reviewed the discovery provided to defendant before trial and had listened to the audio recording of the interview of Ms. Silva conducted by the police. According to counsel, Silva told the police the robber had "green eyes" or "light colored eyes." Yet, defendant's trial attorney did not cross-examine Silva about the robber's eye color or seek to impeach Silva's testimony with her statement to the police. Because defendant has dark brown eyes, he argued Silva's statement during the interview was crucial evidence that should have been introduced to the jury, and his attorney was incompetent by not more strongly challenging Silva about her identification of the robber.

In opposition, the People argued the jury did hear from Silva that the robber had light eyes, and defendant's attorney may have had a reasonable, tactical reason for not cross-examining Silva further or seeking to impeach her testimony.

After hearing the arguments of counsel, the trial court found defendant's trial attorney had not rendered constitutionally deficient representation and denied the motion.

7

ii. Applicable law.

""""""We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard." [Citations.] "'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion.'""""" (*People v. Hoyt* (2020) 8 Cal.5th 892, 957 (*Hoyt*); see *People v. Parker* (2022) 13 Cal.5th 1, 88.)[4] "Usually, 'ineffective assistance [of counsel claims are] more appropriately decided in a habeas corpus proceeding.' [Citation.] But . . . a defendant may raise the issue of counsel's effectiveness as a basis for a new trial, and, to expedite justice, a trial court should rule '[i]f the court is able to determine the effectiveness issue on such motion.'" (*Hoyt*, at p. 958.)

The right to assistance of counsel under the Sixth Amendment to the United States Constitution includes the right to the effective assistance of counsel. (*Strickland*, *supra*,

---

[4] Defendant argues the trial court's ruling is not subject to deferential abuse of discretion review. Instead, he contends the trial court's factual findings are reviewed for substantial evidence and we must independently determine whether he received ineffective assistance of counsel. Our Supreme Court has only applied that mixed standard of review to the denial of a new trial motion based on alleged juror misconduct. (See, e.g., *People v. Caro* (2019) 7 Cal.5th 463, 521; *People v. Collins* (2010) 49 Cal.4th 175, 242 & fn. 31; *People v. Gamache* (2010) 48 Cal.4th 347, 396; *People v. Dykes* (2009) 46 Cal.4th 731, 809; *People v. Ault* (2004) 33 Cal.4th 1250, 1269; *People v. Nesler* (1997) 16 Cal.4th 561, 582.)

In *People v. Callahan* (2004) 124 Cal.App.4th 198, 209, the Court of Appeal held the mixed standard of review should apply equally to new trial motions based on ineffective assistance of counsel. But, *Callahan* has never been cited for that proposition by another court in a published decision. And, to the extent *Callahan* conflicts with *Hoyt*, *supra*, 8 Cal.5th 892, we must decline to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

466 U.S. at pp. 686-674.)  The California Constitution guarantees the same rights.  (Cal. Const., art. I, § 15; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  "In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance.  (*Strickland*[, *supra*,] 466 U.S. [at pp.] 687-692.)  To demonstrate deficient performance, defendant bears the burden of showing that counsel's performance ""''fell below an objective standard of reasonableness . . . under prevailing professional norms.""''"  (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)  To demonstrate prejudice, defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  (*Ibid.*; *In re Harris* (1993) 5 Cal.4th 813, 833.)"  (*People v. Mikel* (2016) 2 Cal.5th 181, 198.)

"'[T]he standard for judging counsel's representation is a most deferential one.' (*Harrington v. Richter* (2011) 562 U.S. 86, 105.)  We 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.' (*Bell v. Cone* (2002) 535 U.S. 685, 702.)"  (*In re Long* (2020) 10 Cal.5th 764, 773.)  ""'[W]e accord great deference to counsel's tactical decisions" [citation], and . . . "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation].  "Tactical errors are generally not deemed reversible, and counsel's

9

decisionmaking must be evaluated in the context of the available facts."'" (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)

And, when the trial record is silent about counsel's reasons, we cannot find ineffective assistance of counsel on direct appeal "'unless there could be *no conceivable reason* for counsel's acts or omissions.'" (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165 (*Johnsen*), italics added; accord, *People v. Lucas* (1995) 12 Cal.4th 415, 442 ["Reviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions."].) As our Supreme Court has noted several times, "rarely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) When ineffective assistance of counsel is found, it is usually in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; *People v. Snow* (2003) 30 Cal.4th 43, 111.)

        iii.    Defendant has not established he received deficient representation.

"'As to whether certain witnesses should have been more rigorously cross-examined, such matters are normally left to counsel's discretion and rarely implicate inadequacy of representation.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 334 (*Bolin*); accord, *People v. McDermott* (2002) 28 Cal.4th 946, 992 ["the manner of cross-examination [is] within counsel's discretion"].) Likewise, the decision whether to impeach a witness with a prior inconsistent statement is a tactical decision left to counsel's discretion, and failure to do so seldom establishes incompetent representation.

10

(*People v. Barnett* (1998) 17 Cal.4th 1044, 1140; *People v. Frierson* (1979) 25 Cal.3d 142, 158.)

First, the People contend the record on appeal is inadequate to preserve defendant's claim because he did not introduce the audio or a transcript of Silva's interview with the new trial motion, and the record does not conclusively establish defendant has dark brown eyes. We are not persuaded. A claim of constitutionally deficient representation "'must be supported by declarations or other proffered testimony establishing both the substance of the omitted evidence and its likelihood for exonerating the accused. [Citations.] We cannot evaluate alleged deficiencies in counsel's representation solely on defendant's unsubstantiated speculation.'" (*Bolin*, *supra*, 18 Cal.4th at p. 334; see, e.g., *People v. Watts* (2018) 22 Cal.App.5th 102, 118 [where defendant failed to support new trial motion with a declaration or affidavit from counsel to support a claim of deficient representation and prejudice, and he did not call the omitted witness to testify during the hearing, the trial court had no choice but to deny the motion].)

To repeat, defendant's attorney declared under penalty of perjury that she had listened to the audio recording of the interview, during which Silva told police the robber had "green" or "light colored eyes." Counsel even brought the audio recording with her to the sentencing hearing and offered to play it for the trial court. Moreover, although on appeal defendant only cites to the points and authorities in support of the new trial motion

11

as proof he has "dark brown eyes,"[5] the "969b packet" introduced into evidence to prove the existence of defendant's prior convictions independently establishes he has brown eyes.[6] Therefore, we conclude the record is sufficient to address defendant's claim.

On the merits, we agree with the People that defendant has not established he received incompetent representation. Defendant's trial attorney was not asked to give reasons for his failure to cross-examine Silva and/or impeach her testimony about the robber's eye color with her prior statement, and the record does not disclose those reasons either. Therefore, we cannot find counsel was incompetent unless no conceivable reasons could exist for the omissions. (*Johnsen*, *supra*, 10 Cal.5th at p. 1165.)

Silva had already testified the robber had "light" eyes and denied he had dark brown or black eyes. Therefore, as the People contend, defendant's attorney may have reasonably concluded Silva's testimony on direct examination was sufficient to support a defense that defendant did not match the description of the robber, and that cross-examining Silva further about eye color or impeaching her with her interview statement was not worth the effort. (See *People v. Moore* (1988) 47 Cal.3d 63, 84 ["[B]ecause [the witness's] testimony was favorable to defendant, it appears counsel's decision to avoid

---

[5] "It is axiomatic that the unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.) "Citing points and authorities filed in the trial court is not appropriate support for factual assertions in a brief. Points and authorities are not presented under penalty of perjury. Matters set forth in points and authorities are not evidence." (*Alki Partners, LP v. DP Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.)

[6] "Section 969b permits the use at trial of certified records of penal institutions to establish that a person has been convicted of a crime or has served time in a penal institution." (*People v. Moreno* (2011) 192 Cal.App.4th 692, 707, fn. omitted.)

12

impeaching [the witness] with a prior inconsistent statement was a reasonable tactical choice."].)  Likewise, as the People assert, counsel may have reasonably concluded cross-examining Silva about her statement that the robber had green eyes would potentially undermine the main thrust of the defense—to sow reasonable doubt by suggesting one of defendant's family members may have committed the crimes.

Because defendant's attorney may have had reasonable, tactical reasons for not questioning Silva about her statement to the police about the robber's eye color, on this record we find no deficient representation.  Therefore, we must conclude the trial court did not abuse its discretion by denying defendant's motion for new trial.

B.      *The Trial Court Did Not Abuse Its Discretion By Denying Defendant's Romero Motion.*

Defendant argues the record on appeal affirmatively demonstrates the trial court did not fully understand its discretion to strike one or more of his strike priors, and he requests that we reverse and remand for the trial court to exercise informed sentencing discretion.  We find no abuse of discretion.

i.      Additional background.

Prior to sentencing, defendant filed a *Romero* motion and requested the trial court exercise its discretion under section 1385 to strike one or more of his strike priors.  The People filed an opposition.

When it addressed defendant's *Romero* motion at the sentencing hearing, the trial court indicated it was "not a fan of the three strikes law."  However, the court noted, "it

does appear that if there was a set of circumstances that fit the 25-to-life three strikes law, it would be a set of circumstances in which a person was convicted on and sentenced to the term in the state prison for armed robbery and then within two years or three after getting out, was convicted again of two armed robberies." In that situation, the court indicated it believed a sentence of 25 years to life would be "automatic" because "[i]t fits so precisely in what the legislature was trying to do" by punishing recidivist offenders more harshly. The court also indicated it believed the facts of that scenario would be "so monumental" that, for the court "to strike anything here," it would have to find there had been "some period of time" during which "there was a process of natural and productive effort by the Defendant while he was out —by any Defendant while they were out of custody to produce some different lifestyle, jobs, college, whatever." Specifically addressing defendant, the court stated, "I can't think of a good reason to strike anything here, and I've tried."

Defense counsel asked the trial court "to view the entire spectrum from the time [defendant] committed those [prior strike] offenses two decades ago to the incidents that give rise to this case." Counsel argued the court should not simply consider "the short period of time that [defendant] was out on the streets after [he] was released from custody after serving his time" for the prior strikes but should also consider his efforts at rehabilitation "while he was in custody [and] was being productive with his time." Besides taking classes in prison and earning various certificates, defendant was part of a prison firehouse and responded to emergencies. Counsel indicated she was merely

asking the court to strike one of defendant's strike priors and sentence him to a determinate sentence "so that he doesn't spend the rest of his life behind bars" and he can still be a productive member of society upon his release.

In response, the prosecutor said, "what [defense counsel is] leaving out is the fact that even after he had completed all of those classes, even after he had tried to get all of that help, he ultimately got out of custody and while he was still on parole after, mind you, serving a 16-year sentence, he then came out and committed another offense." According to the prosecutor, "the primary consideration" was that defendant had been given the opportunity in prison "to turn his life around" through programming, classes, and work assignments, yet "almost immediately upon his release while he was still on parole for those offenses, he goes and picks up another very violent offense. It's really hard to see how that kind of behavior on the Defendant's part would put him outside of the three strikes scheme. He seems as though he is the exact kind of person that the scheme was created for."

The trial court agreed with the prosecutor. "Sadly, it is true that this case does not give the Court any leeway, in my opinion, to judge that his prior actions while he was in custody are really relevant to the three strikes law. I think his commission is too similar; armed robberies, attempted armed robberies, in a short period of time after being released from and committed towards exactly those offenses, really leaves the Court under the sentencing scheme of California almost no discretion whatever." Again, the court

indicated it believed that, under the circumstances of this case, a sentence of 25 years to life was "automatic." Therefore, the trial court denied the motion.

ii. Applicable law.

Under section 1385, subdivision (a), a trial court has the authority, on its own motion or at the invitation of the defendant, to strike an allegation or vacate a finding under the three strikes law that a defendant had previously been convicted of a qualifying violent or serious felony. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at p. 504; *People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "The result of such a dismissal is that a defendant with two or more strike priors and a conviction for a new qualifying offense may be removed from the strictures of the Three Strikes scheme altogether if all of his strike priors are dismissed, or he may be sentenced as a 'second striker' if only one strike prior remains in connection with a newly charged qualifying offense." (*People v. Henderson* (2022) 14 Cal.5th 34, 45.)

"In ruling on a *Romero* motion, the court must consider whether 'the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.] Thus, the Three Strikes law establishes a 'strong presumption' in favor of a harsher sentence and requires the court to explicitly articulate its reasoning if it is to depart from a harsher sentence by granting the *Romero* motion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428.) "A trial court's power to dismiss under section 1385 may be exercised only '"in furtherance of justice,"' which mandates

16

consideration of "'the constitutional rights of the defendant, and *the interests of society represented by the People*.'"" (*People v. Clancey* (2013) 56 Cal.4th 562, 580.)

A trial court's ruling on a *Romero* motion is reviewed on appeal for abuse of discretion. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1162.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citation.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

Defendants are "entitled to a genuine exercise of sentencing discretion by the trial court," and "a discretionary sentencing decision rendered by a judge who did not understand what he was doing would not be sustainable as a proper exercise of discretion." (*In re Large* (2007) 41 Cal.4th 538, 550.) The trial court is presumed to have been aware of and followed the applicable law during sentencing. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *In re Julian R.* (2009) 47 Cal.4th 487, 498-499.)

17

A remand for resentencing is required only where the record affirmatively demonstrates the trial court was unaware of or misunderstood the scope of its discretion to grant a *Romero* motion. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944; *Romero*, *supra*, 13 Cal.4th at p. 530, fn. 13.)

        iii.     The trial court did not abuse its discretion by denying defendant's *Romero* motion.

Focusing on just some of the trial court's statements, defendant argues the record affirmatively demonstrates the court misunderstood the scope of its discretion to strike one of his qualifying strike priors. But, when reviewing the trial court's denial of a *Romero* motion, we must "view the totality of the trial court's statement of reasons, not just one snippet." (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 993.) "Isolated or ambiguous remarks by the trial court" will not overcome the presumption that a sentence is based on legitimate considerations. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 835.)

For instance, defendant points to the fact the trial court stated it believed the Court of Appeal "should review" the ruling, with the implication being the trial court was unsure of its decision and invited review. We do not read the record that way. Read in context, the trial court's somewhat ambiguous comments merely reflected the court's belief that, *if* the defendant were to challenge the ruling on appeal, this court should

carefully review the record the trial court had made with its reasons for denying the motion.[7]

Next, defendant contends the record demonstrates the trial court believed it had no discretion whatsoever to strike one or more of defendant's strike priors and that "the similarity of the prior strikes and length of time prior to the new offense[s] were dispositive." Likewise, defendant contends the court erred by not considering whether striking one conviction and imposing a "second strike" conviction would have been more appropriate.[8]

Taken in isolation, some of the trial court's comments might suggest it felt it had no discretion. As noted, the court said it believed that, under the facts of this case, a 25-year-to-life sentence was "automatic" and the court had no "leeway" or "almost no discretion" to grant the motion. But we agree with the People that, when read in context, "the court's comments best reflect its view that [defendant's] recidivist conduct fell so squarely within the spirit of the Three Strikes law that the court could not justify striking

---

[7] The relevant comment reads, in full:

"This sentence, in my opinion, is automatic. And I think that the record I've made that I do believe that should be reviewed carefully by a court of appeal because if it's going the other way, as you pointed out, the facts here, however, take my consideration of any of the points you've made completely almost out of my consideration, the Court's consideration with regard to striking. Striking has to be done under Section 1385."

[8] In his brief, defendant discusses recent acts by the Legislature and the voters that signal a shift away from excessive sentencing. Defendant does not explicitly argue the trial court erred by not considering that trend when it denied his motion. In any event, almost immediately after saying it was not a fan of the three strikes law, the trial court said it was aware of "more recent liberalization of the sentencing processes," which tends to support the conclusion the court did consider them.

either of [defendant's] strikes." In other words, the record supports the conclusion the trial court believed the facts and circumstances of defendant's current offenses did not justify the *exercise* of its discretion, not that the court believed it had no discretion to begin with.

Last, defendant argues the trial court agreed with the prosecutor that efforts at rehabilitation while in prison "did not matter" and the court deemed those efforts to be "irrelevant." And, citing *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*), defendant argues the trial court erred by not giving sufficient weight to the fact he committed no crimes while in custody and to his efforts at rehabilitation.

*Avila* is distinguishable: whereas defendant here committed two additional serious and violent felonies a few short years after his release from prison (§§ 667.5, subd. (c)(9), 1192.7, subd. (c)(19)), "Avila's poststrike criminal history [was] not characterized by serious or violent crimes." (*Avila*, *supra*, 57 Cal.App.5th at p. 1143.) Moreover, the trial court's comments must be read in their proper context. True, the court said it found defendant's efforts while in prison were not "*really* relevant," but the court did not say they had no relevance whatsoever or they were not something the court could properly consider at all. (Italics added.) To repeat, the court had already stated the nature of defendant's current offences, the similarity of those offenses to his strike priors, and the fact they took place relatively soon after his release from prison meant defendant "fit . . . precisely" within the spirit of the three strikes law. In other words, the trial court

20

concluded defendant's efforts at rehabilitation while in prison, however laudable, simply did not outweigh or overcome the "monumental" nature of his current offenses.

In sum, on this record we find no abuse of discretion.  However, as we explain, *post,* we will reverse a portion of defendant's sentence and remand for resentencing.  At that time, he may renew his *Romero* motion if he so wishes.

C.     *The Matter Is Remanded For Resentencing on Count 2 And Defendant's Firearm and Prison Prior Enhancements, and The New Minutes of Sentencing And Abstract Of Judgment Must Not Include Fines The Trial Court Did Not Impose Orally*.

Both defendant and the People address additional sentencing errors in their briefs.

First, the minute order from defendant's sentencing hearing and the abstract of judgment indicate the trial court imposed a minimum $300 restitution fine (§ 1202.4, subd. (b)(1)) and a minimum $300 parole revocation restitution fine (§ 1202.45, subd. (a)).  However, as defendant argues and the People concede, the trial court did not impose those fines when it orally sentenced defendant.  When the minutes and abstract of judgment conflict with the oral pronouncement of sentence, the latter must generally prevail.  (*People v. Leon* (2020) 8 Cal.5th 831, 855.)  Therefore, after resentencing on remand, the new minutes and abstract of judgment must accurately reflect the oral pronouncement of sentence and not include those fines.  (See *People v. Burke* (2023) 89 Cal.App.5th 237, 244.)

Next, the People contend the trial court erred by ordering the 10-year sentences for defendant's two firearm enhancements and the five-year sentences for defendant's two

prison priors run concurrently with count 1. We agree. Under the three strikes law, defendant's indeterminate terms of 25 years to life on counts 1 and 2 "shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law." (§ 667, subd. (e)(2)(B); see § 1170.12, subd. (c)(2)(B).) Therefore, the sentences on defendant's firearm enhancements and for his priors must be served consecutively to his life terms and not concurrently to them. (*People v. Williams* (2004) 34 Cal.4th 397, 403; see *People v. Flores* (2021) 63 Cal.App.5th 368, 379 [under three strikes law "the term for any applicable enhancement is imposed as separate determinate term to be served before the life sentence."].) Defendant concedes the error but suggests the trial court should either strike the personal use of a firearm findings and prison priors or strike the punishment for them. On remand, defendant may request the trial court to exercise its discretion in that manner. (§ 1385.)

Last, the People argue the trial court erred by ordering that defendant's indeterminate sentence on count 2 run concurrently with the indeterminate sentence for count 1. According to the People, those terms must run consecutively because, as a matter of law, the attempted robbery alleged in count 1 and the robbery alleged in count 2 occurred on separate occasions and/or arose from different operative facts. For his part, defendant argues concurrent sentences on counts 1 and 2 are appropriate because the trial court could have implicitly found the offenses occurred on the same occasion and arose from the same operative facts.

22

The three strikes law provides that the sentences on two or more current felony offenses "not committed on the same occasion, and not arising from the same set of operative facts," "shall" be served consecutively.  (§§ 667, subd. (c)(6), see 1170.12, subd. (a)(6).)  However, the trial court has discretion to impose a consecutive *or* concurrent sentence on two or more current felony offenses if it finds they *were* committed on the same occasion or *did* arise from the same operative facts.  (*People v. Hendrix* (1997) 16 Cal.4th 508, 512-513; *People v. Deloza* (1998) 18 Cal.4th 585, 590-591, 595-596 (*Deloza*); *People v. Lawrence* (2000) 24 Cal.4th 219, 222-223; *People v. Henderson* (2022) 14 Cal.5th 34, 45, 56.)  Where the record demonstrates the sentencing court misunderstood its discretion under the three strikes law to impose a consecutive or concurrent sentence on current felony offenses occurring on the same occasion or arising from the same operative facts, reviewing courts will not engage in harmless error analysis and instead will remand for the trial court to exercise its sentencing discretion.  (*Deloza*, at p. 600; *People v. Jeffries* (2000) 83 Cal.App.4th 15, 25-27.)

Here, the trial court understood it had discretion to run the indeterminate terms on counts 1 and 2 concurrently or consecutively, and the court based its decision to run them concurrently on its belief the two crimes were committed "in the spree" and on "impulse."  The trial court's comments might be construed to indicate the court made implicit findings that the offenses occurred on the same occasion and arose from the same facts.  However, to the extent those comments are ambiguous, and because we are already remanding for resentencing, in the interest of judicial economy we reverse the

23

sentence on count 2.  On remand, the trial court shall exercise its discretion and make express factual findings when determining whether a consecutive or concurrent sentence on count 2 is appropriate.  Although technically rule 4.425 of the California Rules of Court does not apply to indeterminate sentencing under the three strikes law (Cal. Rules of Court, rule 4.403), on remand the trial court may be guided by the criteria set forth in that rule.  (*Deloza*, *supra*, 18 Cal.4th at p. 596, fn. 8.)

### III.

### DISPOSITION

The sentences on count 2 and for defendant's firearm and prison prior enhancements are reversed and the matter is remanded for resentencing consistent with this opinion.  In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
                                                                    Acting P. J.


We concur:


CODRINGTON_____
                         J.


RAPHAEL_____
                         J.